Cook adsm. Linn.

---

### JOHN P. COOK ADSM. ROBERT A. LINN.

In Assumpsit. Rule to show cause why the verdict which had been rendered for the plaintiff, should not be set aside &c.

1. If a plaintiff has, at the defendant's request, discharged a sum of money or debt due from the defendant to any other person, by applying his own money, goods, chattels, securities or lands to such discharge, he may recover the amount so paid or satisfied, in an action of general indebitatus assumpsit, for money paid &c.

2. But the plaintiff cannot upon such a count, recover more money than he actually paid, whether the payment was made in money or in any thing else.

3. If a plaintiff has expended money for the defendant, under a special agreement, in a particular way or for a specific object, to be repaid at a given day, he may after he has performed his part of the contract and after the expiration of the time, recover *the money so expended,* in an action for money paid: but he cannot, *in such action,* recover any advance or premium on his outlays, or any compensation for his risk or trouble, although by the terms of the special agreement, the defendant was to make him such

Cook adsm. Linn.

allowances. If the plaintiff goes for such additional compensation, he must declare upon and prove his special agreement. If the plaintiff at the defendant's request, has taken up and paid off, certain outstanding written evidence of debts due from the defendant to other persons, not of a negotiable nature, the mere production in court at the trial, of such writings, is not sufficient evidence that he has paid off and satisfied such debts, nor that he had done so before the action was brought.

4. The mere production of such writings, will not support an action for money paid &c.

*I. H. Williamson* for defendant, in support of the rule.

*P. D. Vroom,* contra.

HORNBLOWER, C. J.   This action was brought to recover money paid upon a number of tickets, or receipts for Iron ore, usually called "Ore tickets," which had been issued by the defendant or by his clerks or agents, for that purpose.   These tickets were numbered, and each showed upon its face, the quantity of ore received ; of whom, and when received, and the amount due thereon ; but contained no promise of payment by or to any person.   They were mere evidences, that so much ore had been delivered by the person named therein, at the Clinton furnace, on the day mentioned in each ticket.   Several reasons were assigned and pressed upon the argument as sufficient ground for granting a new trial : none of which in my opinion can prevail, except that founded on the misdirection of the court.

The first count in the declaration sets forth a special agreement, by which, " in consideration, that the plaintiff would *take up, purchase and receive* such receipts or ore tickets, as had been, and should be given by the defendant after the first day of December, 1837, of the carters &c. that the defendant would receive the said receipts or tickets of the plaintiff and pay him the amount due thereon, *without any deduction,* at thirty days : to wit, at thirty days from the dates thereof respectively.

The second count, was for goods &c. sold and delivered ; money paid ; money had and received, and money lent &c.

It is abundantly manifest from the evidence in the cause, as reported to us, that for all the tickets, issued during the month of December, 1837, the defendant was peronally liable for the moneys due thereon, to the persons named in them : but they were

not assignable : or rather not negotiable, and consequently no persons except those to whom they had been given, could use them as evidences of debt due to them from the defendant. Nevertheless, if the plaintiff " purchased and took up " any of the tickets in pursuance of such special agreement as was set forth in the declaration, the defendant thereby became liable to pay him the full amount of those tickets, according to the terms of that agreement, without any regard to the question of how much the plaintiff paid for them. If however, there was no such special agreement, and the plaintiff paid for and took up the tickets at the defendant's request, then the plaintiff can only recover upon the general count, the money or value actually paid by him for the tickets.

But it is not pretended that there was any evidence on the trial, of such special agreement as is set out in the declaration. The evidence on this part of the case, proves at most, a request by the defendant, that the plaintiff would take up the ore tickets, and a promise by defendant to repay him in sixty or thirty days.

The plaintiff produced at the trial, between sixty and seventy ore tickets, issued by the defendant or his agents, amounting in the aggregate to about two hundred dollars : but he gave no evidence (except as to a few of them) how he came by them : nor whether he had given any thing for them, either in money or goods : nor did he give any evidence to show that he owned *all* the tickets when he brought this action.

Upon these facts, the Judge in charging the jury stated, that as the plaintiff's proofs did not correspond with the special agreement in the declaration, he could not recover on the first count ; " but if upon his part, he had performed *a special* agreement, by taking up tickets for the defendant, to be paid *the amount of them* in sixty or ninety days," the plaintiff was entitled to recover on the general count for money paid &c. And again the Judge told the jury, " that if the plaintiff (being a storekeeper) gave store-goods, or even his note, and the holder accepted such goods or notes in payment, it was equivalent in law to taking them up with money." And again, " that if the plaintiff had the tickets in possession, ready to be delivered up to the defendant, it was a sufficient evidence of payment."

As to so much of the charge as relates to the manner of pay-

ing for the tickets, I am inclined to think it was correct. The cases are not reconcilable, on this point: some requiring an actual payment of money in order to sustain a count for money paid ; others, holding that a promissory note or other negotiable paper, given by the plaintiff and accepted by the creditor in satisfaction of the debt, is sufficient : others again sustaining the action, where a bond has been given, or land conveyed by the plaintiff in satisfaction and extinguishment of the debt.   But after examining the cases, (most of which will be found collected or referred to, in *Hoyt* v. *Hoyt*, 1 *Harr. R.* 138, 146 ; and in *Anthon's Nisi Prius*, 132 in a note,) I am of opinion, upon principle, that wherever the plaintiff has, at the defendant's request, discharged a sum of money or debts due from the defendant to any other person, by applying his own money, goods, chattels, securities or lands to such discharge, he may recover the amount so paid or satisfied, in an action of general indebitatus assumpsit, for money paid &c.

If however, by the first part of the charge, the judge meant to say, that upon a count for money paid, laid out and expended, to and for the use of the defendant, the plaintiff might recover *more* money than he had actually paid, laid out and expended, or more than the note, or value of the goods he had appropriated to the defendant's use, I think he was clearly wrong.   It is true, if work and labor has been performed, or goods sold and delivered, or services rendered, under a special agreement, not under seal, and the remuneration was to be in money, the plaintiff if he has performed his part of the contract, need not declare specially, but may recover the stipulated sum upon a general count, for work and labor, or materials found, or goods sold and delivered, as the case may be.  1 *Chit. on Pl.* 239 ; *Harris* v. *Oke, Bul. N. P.* 139 ; and other cases cited by Mr. Chitty *ut supra ;* and see the cases on this subject collected in 2 *Petersd. Abr. Tit. Assumpsit,* 293 to p. 417 in margin.   So if a man expends money for me, under a special agreement, in a particular way, to be repaid by me at sixty or ninety days, he may, after he has performed his part of the contract, and after the sixty or ninety days have elapsed, recover of me *the money so expended,* in an action for money paid ; but I apprehend he cannot recover more in such an action, than the money actually expended, although by the terms

Cook adsm. Linn.

of the special agreement, I was to pay him an advance or premium on his outlays.

But however this may be, the Judge erred, in my opinion, in charging the jury, that the possession of the tickets by the plaintiff, was "sufficient evidence" that he had paid for them. If they were negotiable instruments, the plaintiff's possession of them would be prima facie evidence of his title to them and to the money due upon them : but they are not such instruments : they are mere evidences, or memorandums to show how much the defendant was indebted to the several persons to whom he gave them ; and no action can be brought upon them, by any body. This action is not brought *on* the tickets, nor for the money *due upon* them ; it is brought for money *paid, laid out and expended* for the defendant's use, and at his request; and consequently, the plaintiff must support his declaration by proof; he must prove that he has *paid* money, or something equivalent to it ; and he must prove *how much* he has paid, or he cannot recover. This however is admitted ; but it is insisted that the mere *possession* of the tickets, amounts to such proof; that it proves not only that he paid for them, but *how much* he paid for them. In my opinion it proves neither. The most, and all that can be said is, that the plaintiff's possession of the tickets is prima facie evidence that he came lawfully by them ; and so he would have done, if he had found them ; or if they had been deposited with him for safe keeping ; or if he had borrowed them ; or merely received them from the owners for the purpose of collecting the money on them in this suit, for their benefit. Surely then, the mere fact that the tickets are in his possession, is no evidence that he actually paid money or goods for them, and much less of the amount he paid.

There is still another objection to this part of the charge. The agreement was, so far as can be collected from the evidence, that the defendant was to have thirty or sixty days time to redeem them in. Now, if the possession of the tickets by the plaintiff, was "sufficient" evidence that he had paid for them, it certainly was no evidence of the time *when* he had paid for them : nor was it any evidence that he owned them or had paid for them, before he brought the action.

It may be, as insisted, that no injustice has been done ; but I

cannot say it has not: there is some reason to fear, that the jury allowed for tickets which the plaintiff had not in his possession when the action was commenced, or which he did not obtain until after the defendant's agency at the furnace had ceased.

In my opinion therefore, the rule ought to be made absolute and a new trial granted. The costs to abide the event of the suit.

WHITE, J. concurred. ELMER, J. concurred in making the rule absolute. WHITEHEAD, J. did not hear the argument.

STATE OF THE CASE, *prefixed to the opinion of Mr. Justice Nevius.*

The declaration charges, that the defendant, on the 6th day of December, 1837, and before and after, conducted certain iron works called the " Clinton Furnace," and employed persons and teams to transport ore to said works, and for each load so carted, he gave the carter thereof a receipt, acknowledging that he had received the quantity expressed in such receipt and the price due for carting the same; which receipts were called " *ore tickets.*" That afterwards and on the day aforesaid, in consideration, that the plaintiff would take up, purchase and receive such of said tickets as had been or should be given by the defendant, after the 1st day of the same month, of the persons so employed in carting, that he the defendant, would receive said tickets and pay to the plaintiff the amount due thereon, without deduction, at thirty days from the respective dates thereof. It then avers that relying &c. he the said plaintiff did take up and pay off the sums due on one hundred and fifty of said tickets given after the 1st of December, amounting in the whole to three hundred and fifty dollars, of which the defendant had notice.

The second count is a general indebitatus for goods sold, money paid &c. to all which, the defendant pleaded the general issue.

In a bill of particulars furnished by the plaintiff, a copy of one of these receipts or tickets is given and is in the following form : " December 5, 1837, No. 512, Received per Thomas Perry's team from the ore bed, 20 1-4 cwt. ore at 3 50-100 dollars, per ton." Cwt. 20. 1.00 is $3 54 (signed) " H. W. Cook."

The others are alleged to be in like form, and in the bill are referred to by their numbers. The amounts and dates of said

tickets are also furnished in said bill, with charges for money lent and paid to said defendant and his servants at his request, with some other matters not necessary to be noticed here.

Upon the trial at the Sussex Circuit, several bills of exception were tendered by the defendant and sealed by the court. These present a mass of testimony too voluminous to be here stated in detail, and not necessary for the decision of the question involved in the case. I will only advert to such parts as are connected with the questions agitated at the trial, and discussed on the argument of the present motion.

The plaintiff proved, that in August, 1837, the defendant assumed the management of the Clinton Furnace, which had before been conducted by " The Clinton Manufacturing Company " in the county of Passaic, and that he continued there till about the first of January, 1838. That he undertook to put the furnace in blast in September, and attended to getting coal and ore for the works. That the tickets were signed and issued by the persons employed in weighing the ore. That the credit of the company was low and the defendant told the carters he would see them paid, and that the " blast " was to pay the debts contracted in carrying it on. That the iron made was sent away in the name of the defendant, and that he received the proceeds or part of the proceeds. The books continued to be kept in the name of the company, but the blast was carried on upon the credit of the defendant, who said he had made an arrangement with the plaintiff, to take the " *ore tickets* " and that he was. to pay them in a certain time thirty or sixty days.

After the foregoing evidence, the plaintiff offered in evidence the tickets which were objected to by the defendant, but permitted by the court to be read.

A motion to nonsuit having been overruled, the defendant proved that he left the Furnace about the 1st of January, 1838, in consequence of an injunction having been obtained against the company. That about this time the plaintiff sent his son to the works with about one hundred and fifty dollars worth of tickets to be redeemed, who was informed that the contract in relation to the redemption of the tickets could not be complied with, in consequence of the injunction, that the works were going on differently under other managers, and that the defendant had left

there altogether. That the plaintiff's son at the same time brought a letter from him, which the witness had not since been able to find though he had searched for it. The witness further stated, that he did not consider the letter worth much, and did not preserve it, the plaintiff's son might have taken it back.

The defendant then offered to show the contents of that letter, which offer was overruled. He then offered in evidence the books of account of the company, which were in like manner rejected.

He then proved, that all the money received by him for iron, had been paid out by him for debts contracted in carrying on that "blast," and gave in evidence a receipt from the plaintiff to the company for fifty dollars. Also, that the plaintiff had presented this account to the receivers appointed by the Chancellor under the injunction against said company.

He then offered to prove, that the plaintiff had purchased and paid for the tickets with store goods and not for cash, and that he charged more for his goods in such exchange than when he sold for cash. This evidence was also rejected.

It was further proved on the part of the defendant, that the ore carted after the 1st of January, was upon the credit of the company; and on the part of the plaintiff, that he held other tickets of the company and their due bill, upon which he had credited the company the fifty dollars above mentioned.

Upon this evidence, which is all that is material to be here stated, the court charged,

First, That the plaintiff's proof did not support the special agreement in his declaration, but if he took up these tickets at the defendant's request and on his promise to pay them in thirty or sixty days, he was entitled to recover on the general count for money paid.

Second, That he need not prove, that he paid for the tickets in cash, but payment in goods or even in his own note, if accepted in payment, was sufficient.

Third, That possession of the tickets was evidence of his having paid for them.

Fourth, That if these tickets are for the ore carted on the defendant's credit, during his "blast," and are the same which he undertook to pay, and promised the plaintiff to take up, it matters

not by whom they were signed; and he left this to the jury to determine.

Fifth, That the plaintiff had no claim for any tickets taken by him after notice that the defendant had left the furnace.

Sixth, That if the jury believed the fifty dollars paid to the plaintiff was the money of the company and paid on their own separate account they ought not to allow to the defendant any credit for it.

Upon this evidence and charge of the court, the jury rendered a verdict for plaintiff for two hundred and thirty-three dollars and sixty-eight cents.

NEVIUS, J. The first reason assigned and urged by the defendant for setting aside this verdict is, that the court erred in permitting these receipts or tickets to be read to the jury, without other proof than the handwriting of the persons who signed them, and without evidence of actual payment by the plaintiff or the time that he received them. I perceive no error in this. The tickets were signed and issued by the persons there employed as weighers of the ore carted, and who were fully authorized to issue them. Whether they were in the service of the company or not, they are to be esteemed the agents of the defendant for this purpose, and their act in signing and issuing the tickets during the defendant's connection with the works, was binding upon him. Proof of their signature, and the plaintiff's possession of the tickets and the defendant's promise to pay the amount to the plaintiff if he would take them up, was sufficient to charge him. Nor was it necessary for the plaintiff to prove the actual payment of the amount of monies specified in them, either in cash or any other mode. The proof that he was requested to take up the tickets, and the fact of his having them in possession, ready to be delivered up to the defendant, thereby discharging him from all liability to the original holders, was presumptive evidence of payment, and whether paid in money or in goods or in his own notes, cannot affect his claim. But it was insisted, that under a general count for money paid, the plaintiff could recover no more than he had actually paid and therefore it was incumbent on him to prove what he had paid in money or in goods. In this I think the defendant is mistaken. A plaintiff

may recover on the money counts though there was a special agreement, provided the contract has been performed on his part. Mr. Justice Story, in the *Bank of Columbia* v. *Paterson's Admr.*, 7 *Cranch* 303, remarks, "We take it to be incontrovertibly settled, that indebitatus assumpsit will lie to recover the stipulated price due on a special contract not under seal, where the contract has been completely executed." The same doctrine is laid down in 2 *Saun. Rep.* 350, note 2; *Buller's N. P.* 139 ; 2 *Phil. Ev.* 109, *Amer.* from 7th *London Edition* ; 7 *Vermont R.* 223, 228 ; 24 *Wend. R.* 63. Here was a contract completely executed by the plaintiff in taking up the tickets, the *stipulated price* for this service was not the precise amount that the plaintiff might pay for them but the amount of the tickets, that is the sums mentioned in them. The plaintiff cannot be esteemed as the mere agent of the defendant for this purpose, and therefore entitled only to the amount actually paid. He incurred risk, delay and responsibility, and for this he was to receive on his contract a stipulated price, which was the amount of the tickets. I see no error in the Judge's charge on this point.

It is further objected, that the plaintiff did not prove, that the tickets for which the jury rendered their verdict, had all been taken up by him before the commencement of his suit and before notice to him that the defendant had left the works and was no longer liable on his contract. He did prove that about the 1st of January, 1838, when the defendant left the furnace, he had at least one hundred and fifty dollars in tickets, and the court left it fairly to the jury to determine the fact, whether the tickets produced, were the same which the defendant procured the plaintiff to take up, and which he had taken up before notice that the defendant was no longer to be held responsible. In determining this question I find nothing in the case to warrant the conclusion, that the jury committed a mistake.

It is also insisted, that the court erred in refusing to permit the defendant to prove the contents of a letter written by the plaintiff, after proving its loss. The evidence of its being accidentally lost so as to entitle the defendant to this secondary proof, was by no means satisfactory. The witness stated, that he thought the letter of too little consequence to preserve and could not say whether the person who delivered it to him, took it back

or not. If it was taken back, the defendant was bound to notify the plaintiff to produce it before he could prove its contents. If it was voluntarily destroyed by the witness who was the defendant's agent, he was not entitled to show its contents. I see no error in this decision of the court.

A third ground relied on for a new trial is, that the court refused to let the defendant give in evidence the books of account of the company. It does not appear for what purpose they were offered. Prima facie they were not lawful evidence in this suit. The contract between these parties was an original one, and independent of the company, and could not be affected by other dealings with the plaintiff and the company. The case does not show that they were improperly overruled.

Again it is insisted, that the jury should have allowed the defendant a credit for the fifty dollars paid by the company to the plaintiff. This question was left to the jury upon correct principles, and their decision should be final unless it is clearly shown, that they committed a mistake, this has not been done.

Many other reasons were assigned in support of the motion for a new trial in this case, but were not pressed in the argument, nor do I find upon a careful examination of the whole case, that they are sustained. The cause appears to have been warmly contested, much evidence given on each side and so far as the court was concerned, I apprehend it was fairly tried and fairly submitted to the jury by the charge. The defendant's undertaking was proved, his indebtedness to the plaintiff in some amount established, and I cannot think, that either the rights of the defendant or the law of the case, calls for a new trial, and I am of opinion, that the rule should be discharged with costs.